UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 05-CV-1551 (JFB) (AKT)
_____

FRANK H. FINKEL, CHESTER BROMAN, JOSEPH A. FERRARA SR., ALEXANDER E. GETTLER, GARY LA BARBERA, LAWRENCE KUDLA, THOMAS GESUALDI, AND PAUL GATTUS, as trustees and fiduciaries of the local 282 welfare trust fund, the local 282 pension trust fund, the local 282 annuity trust fund, the local 282 job training trust fund, and the local 282 vacation and sick leave fund.

Plaintiffs,

VERSUS

FRATTARELLI BROTHERS, INC., PODESTA TRUCKING CORP., D/B/A PODESTA TRUCKING CONSTRUCTION CORP., VINCENT FRATTARELLI, AND ROGELIO PODESTA,

Defendants.

_____

MEMORANDUM AND ORDER
June 17, 2008
_____

JOSEPH F. BIANCO, District Judge:

Plaintiffs Frank H. Finkel, Chester Broman, Joseph A. Ferrara Sr., Alexander E. Gettler, Gary La Barbera, Lawrence Kudla, Thomas Gesualdi, and Paul Gattus, as Trustees and Fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Fund (hereinafter, "plaintiffs" or "the Funds") bring this action alleging that Frattarelli Brothers Inc. ("Frattarelli Brothers"), Podesta Trucking Corp. ("Podesta Trucking"), and individual defendants Vincent Frattarelli and Rogelio Podesta[1], through a coordinated fraudulent scheme, failed to pay contribution obligations to the Funds as required by Podesta Trucking's collective bargaining

---

[1] Frattarelli Brothers and Vincent Frattarelli will hereinafter be referred to collectively as "Frattarelli defendants." Podesta Trucking and Rogelio Podesta will hereinafter be referred to collectively as "Podesta defendants."

agreement with Building Material Teamsters Local 282 ("Local 282" or the "Union"). Plaintiffs seek injunctive and monetary relief under Sections 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132 and 1145. Presently before the Court is plaintiffs' motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is granted in part and denied in part.

I. BACKGROUND

A. The Facts

The facts described below are taken from the parties' depositions, affidavits, exhibits, and the parties' Local Rule 56.1 statement of facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 54-55 (2d Cir. 2005).

1. The Funds

Plaintiffs Frank H. Finkel, Chester Broman, Joseph A. Ferrara Sr., Alexander E. Gettler, Gary La Barbera, Lawrence Kudla, Thomas Gesualdi, and Paul Gattus (the "Trustees") are or were fiduciaries of Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund within the meaning of Section 3(21)(A) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002(21)(A). (Pls.' 56.1 at ¶ 1.)[2] The Funds are "employee benefit plans" and "multiemployer plans" within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and 1002(37), and are located in Lake Success, New York. The Funds are jointly administered by a Board of Trustees, comprised of an equal number of labor and management representatives in accordance with Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5). (Pls.' 56.1 ¶ 2.) The Funds were maintained pursuant to a Declaration and Agreement of Trust (the "Trust Agreement") through June 30, 1999. Since July 1, 1999, the Funds have been maintained pursuant to a Restated Agreement and Declaration of Trust (the "Restated Trust Agreement") (collectively, the "Trust Agreements"). (Pls.' 56.1 ¶ 3.) The Funds are financed solely by contributions that are made to the Funds by employers that are a party to collective bargaining agreements (the "CBAs") with Local 282 I.B.T. ("Contributing Employers") and the investment income generated on those contributions. The Funds provide welfare, pension, annuity, job training, and vacation and sick leave benefits to employees covered by the CBAs between Local 282 and contributing employers. (Pls.' 56.1 ¶ 4.)

The Trustees require Contributing Employers to submit written forms, referred to as "remittance reports," that include the Contributing Employer's statement of the number of hours worked by its employees in Covered Employment for the period at issue along with the required contribution payments to the Funds. (Pls.' 56.1 ¶ 5.) The Trustees also require Contributing Employers to submit to periodic audits of their books and records in order to verify that the correct amount of

---

[2] Where only one party's Rule 56.1 statement is cited, the opposing party does not dispute that fact or has offered no evidence to controvert that fact.

2

contributions have been made to the Funds, and to identify all individuals who may be eligible for benefits from the Funds. (Pls.' 56.1 ¶ 6.) Pursuant to the Trust Agreements and in accordance with ERISA, an employer who fails to pay contributions when due is required to pay (1) the delinquent contributions, (2) interest from the first day of the month when the payment was due through the date of payment, (3) liquidated damages in the amount of the greater of (i) additional interest, or (ii) twenty percent of the unpaid contributions, (4) audit fees, and (5) attorney's fees. (Pls.' 56.1 ¶ 7.) For contribution obligations that accrued prior to November 1, 2003, the Trust Agreements provide that interest shall be "at the rate specified in Section 5-501 of the General Obligations Law of the State of New York." The Trustees have always interpreted this provision as a sixteen percent per annum interest rate. For contribution obligations that accrue on or after November 1, 2003, the Restated Trust Agreement, as amended, provides for interest to be calculated at the rate of 1-1/2 percent per month or eighteen percent per annum. (Pls.' 56.1 ¶ 8.)

### 2. Frattarelli Brothers

Frattarelli Brothers is a New Jersey corporation which has been in existence since the 1950s. (Pls.' 56.1 ¶ 22.) Vincent Frattarelli is one of two owners of Frattarelli Brothers and serves as the president and director of the company. (Pls.' 56.1 ¶¶ 24,25.) Frattarelli was principally responsible for the daily operations of Frattarelli Brothers. (Pls.' 56.1 ¶ 26.) Frattarelli's sister, Jeanette Coppa, was a secretary and bookkeeper at Frattarelli Brothers. (Pls.' 56.1 ¶ 27.)

Frattarelli Brothers was involved in the picking up of construction materials from job sites in New York City, and the delivery of that material to New Jersey. (Pls.' 56.1 ¶ 28.) Frattarelli Brothers employed drivers and also hired owner-operators. (Pls.' 56.1 ¶ 29.) Although Frattarelli Brothers regularly worked in New York City on jobs that required a union contract, Frattarelli Brothers never signed a CBA with Local 282. (Pls.' 56.1 ¶ 30.)

### 3. Podesta Trucking

Podesta Trucking Construction Corp. ("Podesta Trucking") is a New Jersey corporation, whose sole owner is Rogelio Podesta ("Podesta").[3] (Pls.' 56.1 ¶¶ 9, 10.) Podesta Trucking has been a party to a series of CBAs with Local 282 known as the New York City Heavy Construction and Excavating Agreements. (Pls.' 56.1 ¶ 11.) Specifically, Podesta signed the July 1, 1996 through June 30, 1999 CBA, effective August 13, 1997, and the July 1, 1999 through June 30, 2002 CBA. (*Id.*) Podesta did not sign a CBA for the period from 2002-2006. (Pls.' 56.1 ¶ 12.)

Plaintiffs assert that Podesta Trucking

---

[3] Defendant Podesta Trucking asserts that Podesta Trucking Construction Corp. was formerly a New Jersey corporation which was deactivated in or around 1992. (Podesta Defs.' response to Pls.' 56.1 ¶ 9.) Podesta Trucking Corp. is a New Jersey corporation which was formed in 1997 and remains in existence through the present. (*Id.*) While the CBA that Podesta signed in 1997 indicated that Podesta Trucking Construction Corp. was the signatory, the company actually in existence at that time was Podesta Trucking Corp. (*Id..*) As such, both sides agree that all references herein to Podesta Trucking Construction Corp. should be deemed to refer to Podesta Trucking Corp. (*Id.*)

3

submitted signed remittance reports and paid contributions to the Funds until March 2003 at the contribution rates set forth in the 2002-2006 CBA. (Pls.' 56.1 ¶ 13.) Podesta defendants deny, however, that they paid contributions and assert that Frattarelli Brothers paid the contributions to the Funds.[4] (Podesta Tr. 38-42.) Podesta Trucking submitted remittance reports to the Funds from March 2003 through March 2004 reflecting that Podesta Trucking's employees did not do any work for which contributions were owed the Funds. (Pls.' 56.1 ¶ 14.) The remittance reports submitted by Podesta Trucking were signed by Rogelio Podesta. (Pls.' 56.1 ¶ 15.) The remittance reports submitted by Podesta Trucking include the following statement immediately above the signature line on the remittance report:

> "BY SIGNING THIS REPORT YOU AGREE TO ACCEPT THE TERMS OF THE CURRENT LOCAL 282 INDUSTRY COLLECTIVE BARGAINING AGREEMENT COVERING THE WORK PERFORMED BY YOUR EMPLOYEES."

(Pls.' 56.1 ¶ 16.)

Plaintiffs assert that Podesta Trucking submitted its books and records to the Trustees' auditors for two separate audits covering periods under the 2002-2006 CBA – August 1, 2000 through September 30, 2002, and October 1, 2002 through September 30, 2003. (Pls.' 56.1 ¶ 17.) In addition, Podesta paid the amounts found owing on said audits. (*Id.*) Podesta Trucking admits that it submitted its books and records for audits as alleged and transmitted amounts found owing, but deny that Podesta Trucking was the source of payment. (Podesta Defs.' response to Pls.' 56.1 ¶ 17.) The Restated Trust Agreement provides that in the event that an employer makes contributions to the Funds at the rates stated in the industry wide-collective bargaining agreement, "[t]he Employer shall be deemed a party to the current collective bargaining agreement and shall be obligated to make timely contributions to each Fund as set forth in that collective bargaining agreement." (Pls.' 56.1 ¶ 18.)

At no time since July 1, 2002 through the present has Podesta Trucking or any of its representatives submitted written or other notification to the Funds that it was seeking to terminate its collective bargaining relationship with Local 282. (Pls.' 56.1 ¶ 19.) In addition, Podesta Trucking admitted in its Answer that Podesta Trucking "entered into a series of collective bargaining agreements with Local 282." (Pls.' 56.1 ¶ 20.) Moreover, Podesta Trucking did not assert any affirmative defenses that it was not bound to the 2002-2006 CBA. (*Id.*) By letter dated December 10, 2004, Podesta's accountant, Raphael Umpierre, advised Fund Manager William Maye of his understanding that "Podesta Trucking is still a member of the union in good standing and has complied with all requirements to continue as a member." (Pls.' 56.1 ¶ 21.)

### 4. Podesta Trucking's Relationship with Frattarelli Brothers

Frattarelli knew that Podesta Trucking had a CBA with Local 282. (Pls.' 56.1 ¶ 31.)

---

[4] Podesta and Podesta Trucking do not indicate whether they paid the contribution under the rates set forth in the 2002-2006 CBA.

4

Plaintiffs allege that, on an unspecified date after Podesta Trucking signed a CBA with Local 282 in 1997, Frattarelli approached Podesta about the possibility of putting Frattarelli Brothers's drivers on the payroll of Podesta Trucking so that Frattarelli Brothers's drivers could work in New York City under Podesta Trucking's CBA. (*Id.*) Further, Podesta agreed to allow Frattarelli Brothers to use the Podesta Trucking CBAs. (*Id.*) Frattarelli and Frattarelli Brothers assert, however, that Podesta did not ask about the possibility of putting Frattarelli drivers on the Podesta Trucking payroll. (Frattarelli Tr., at 51.) According to Frattarelli, he used Podesta Trucking's CBA because Frattarelli Brothers "didn't have a contract and [] couldn't pay pension and welfare to the union, the only way I could work is to use Podesta's contract. I'd pay the pension and welfare contributions to him and he'd pay the union." (Frattarelli Tr., at 52.)

Plaintiffs contend that the arrangement between Podesta and Frattarelli to place Frattarelli Brothers's drivers on the payroll of Podesta Trucking was unwritten. (Pls.' 56.1 ¶ 33.) Frattarelli defendants argue that the drivers were to say they were working under Podesta's contract, but this arrangement did not entail Frattarelli Brothers's drivers being placed on the payroll of Podesta Trucking. (Frattarelli Tr., at 54.) Frattarelli directed Frattarelli Brothers's drivers to tell the union steward that the driver was "working under Podesta's contract." (Pls.' 56.1 ¶ 34.) Frattarelli directed his drivers to write on forms that were required to be completed at certain job sites that the driver was "working for Podesta" notwithstanding that the driver was not working for Podesta Trucking. (Pls.' 56.1 ¶ 35.) Plaintiffs allege that Frattarelli gave Podesta Trucking paystubs to owner/operators to give to Local 282 stewards. (Pls.' 56.1 ¶ 36.) Frattarelli defendants contend, however, that Frattarelli never allowed any of his drivers to provide Podesta Trucking check pay stubs to Local 282 stewards. (Podesta Tr., at 43; Frattarelli Tr., at 84.)

Frattarelli Brothers prepared the remittance reports that were submitted to the Funds on behalf of Podesta Trucking. (Pls.' 56.1 ¶ 37.) Frattarelli defendants contend that Podesta signed all monthly remittance reports that were submitted to the Funds on behalf of Podesta Trucking and all checks submitted for payment with the reports. (Podesta Tr., at 40, 41.) Although payment to the Funds was submitted by Podesta Trucking, Frattarelli Brothers actually paid the contributions to the Funds for the Frattarelli Brothers's drivers. (Pls.' 56.1 ¶ 38.)

The drivers who were reported to the Funds as having worked for Podesta Trucking were actually drivers for Frattarelli Brothers. (Pls.' 56.1 ¶ 39.) Plaintiffs contend that Frattarelli Brothers paid the wages of drivers who were put on the payroll of Podesta Trucking. (Pls.' 56.1 ¶ 40.) Frattarelli defendants assert, however, that Frattarelli Brothers's drivers were paid by Frattarelli Brothers. Plaintiffs assert that Frattarelli Brothers paid its drivers for the costs associated with being a member of Local 282. (Pls.' 56.1 ¶ 41.) Podesta defendants deny this assertion, but admit that Jeanette Coppa, a former secretary at Frattarelli Brothers, did testify that Frattarelli would reimburse drivers for certain dues as a courtesy. (Coppa Tr. 37-38.) The only payments related to the drivers for which Podesta Trucking checks were used were for Fund contributions and payroll taxes. (Pls.' 56.1 ¶ 42.) Plaintiffs assert that Podesta's only role was to sign the checks and

5

the remittance reports that were submitted to the Funds. (Pls.' 56.1 ¶ 43.)

On those jobs that Frattarelli Brothers' drivers were instructed to state that they were working for Podesta Trucking, the drivers used Frattarelli Brothers's trucks ( not Podesta Trucking's trucks). (Pls.' 56.1 ¶ 44.) Frattarelli Brothers's drivers were instructed to state that they working for Podesta Trucking, and Frattarelli Brothers (and not Podesta Trucking) billed the customers for the work. (Pls.' 56.1 ¶ 45.) On those jobs that Frattarelli Brothers's drivers were instructed to state that they were working for Podesta Trucking, Frattarelli – and not Podesta – was present at that job sites. (Pls.' 56.1 ¶ 46.) Other than having signed the Local 282 CBA, Podesta played no role on those jobs for which Frattarelli Brothers's drivers were instructed to state that they were working for Podesta Trucking. (Pls.' 56.1 ¶ 47.)

Podesta Trucking signed a CBA with Local 282 in 1997 because Podesta expected to have work in New York, but such work never materialized. (Pls.' 56.1 ¶ 48.) Plaintiffs assert that Podesta Trucking did not maintain an office. (Pls.' 56.1 ¶ 49.) Frattarelli and Podesta defendants assert, however, that Podesta Trucking maintained an office at Podesta's residence. (Podesta Tr., at 32-34.) Plaintiffs contend that, for the first few years of incorporation, Podesta Trucking did not hire any drivers. (Pls.' 56.1 ¶ 50.) Frattarelli and Podesta defendants assert that Podesta Trucking hired its first driver, Mr. Louis Cabrera, in 1998.[5] (Podesta Tr., at 20-

---

[5] Plaintiffs assert that Mr. Cabrera was hired in 1999. However, the deposition testimony of Mr. Podesta indicates that Mr. Cabrera was hired in 1998. (Podesta Tr., at 24.)

29.) Plaintiffs further claim that Mr. Cabrera only worked on Frattarelli Brothers's jobs. (Pls. 56.1 ¶ 51.) Although both Frattarelli and Podesta defendants seem to dispute that Cabrera worked solely on Frattarelli Brothers's jobs, the portions of the deposition transcript cited to by defendants corroborates plaintiffs' assertion. (Podesta Tr., at 47.)

Podesta Trucking only had one truck. (Pls.' 56.1 ¶ 52.) For the entire period that it was in existence, Podesta Trucking never had any customers. (Pls.' 56.1 ¶ 53.) Between the signing of the CBA in 1997 and the hiring of Louise Cabrera, Podesta Trucking did not do any work. (Pls.' 56.1 ¶ 54.) Podesta Trucking did not have any tax liabilities that were not paid for by Frattarelli Brothers. (Pls.' 56.1 ¶ 55.) Plaintiffs assert that Frattarelli Brothers paid for the services performed by Podesta Trucking's accountant. (Pls.' 56.1 ¶ 56.) Podesta defendants admit this fact. Frattarelli defendants contend, however, that invoices from Podesta Trucking's accountant were sent to Podesta Trucking and the accountant was paid by checks drawn on Podesta Trucking accounts and signed by Rogelio Podesta. (Podesta Tr., 49-50.) A reading of the Podesta deposition testimony indicates that, though the checks were from Podesta Trucking and drawn from Podesta Trucking accounts, Frattarelli Brothers would reimburse Podesta Trucking for the amounts drawn upon. (*Id.*) Further, it was Frattarelli Brothers who ordered checks for Podesta trucking. (Pls.' 56.1 ¶ 57.)

5. Alex Ruiz's Employment with Frattarelli Brothers

Alex Ruiz was employed by Frattarelli Brothers for approximately eight years between 1996 and 2003. (Pls.' 56.1 ¶ 58.)

While employed at Frattarelli Brothers, Mr. Ruiz almost always worked in New York City. (Pls.' 56.1 ¶ 59.) Frattarelli advised Mr. Ruiz that he should become a member of Local 282, and Frattarelli paid the union membership fees required for Mr. Ruiz to become a Local 282 member. (Pls.' 56.1 ¶ 60.) Plaintiffs assert that, when Mr. Ruiz first began working for Frattarelli Brothers, the truck that he drove had a magnetic sign on it that said "Frattarelli Brothers" and that nothing was written on the truck underneath the magnetic sign at that time. (Pls.' 56.1 ¶ 61.)

At the beginning of Mr. Ruiz's employment with Frattarelli Brothers, he received paychecks and paystubs from Frattarelli Brothers. (Pls.' 56.1 ¶ 62.) After some period, however, Mr. Ruiz began to simultaneously receive paychecks from Frattarelli Brothers and pay stubs from Podesta Trucking. (*Id.*) Notwithstanding being given Podesta Trucking paystubs, Mr. Ruiz was not paid by Podesta Trucking. (Pls.' 56.1 ¶ 63.) The Podesta Trucking paystubs did not reflect the actual amount of pay given to him in the Frattarelli Brothers's check. (Pls.' 56.1 ¶ 64.) Additionally, plaintiffs assert that the paystubs reflected a greater amount of pay than given to him in the Frattarelli Brothers's check. (*Id.*) Although Podesta defendants appear to object to this assertion, the deposition testimony provided by Podesta defendants supports plaintiffs' assertion. (Ruiz Tr., 101-04.) Mr. Ruiz understood that the reason he was given paystubs from Podesta Trucking was because the "union contract . . . was in the name of Podesta Trucking" and because the paystubs could be given to Local 282 representatives to verify that the drivers were working in accordance with the CBA. (Pls.' 56.1 ¶ 65.)

Frattarelli defendants deny that the Frattarelli ever allowed any of his drivers to provide Podesta Trucking check stubs to Local 282 stewards. (Frattarelli Defs.' Response to Pls.' 56.1 ¶ 65.) However, a review of the deposition transcript of Mr. Frattarelli, provided by Frattarelli defendants, indicates that Mr. Ruiz was given a Podesta paystub, but according to Mr. Frattarelli, Ruiz never provided it to the stewards. (Frattarelli Tr., at 84.) Plaintiffs assert that Frattarelli advised Mr. Ruiz to present the Podesta Trucking paystubs to the Local 282 stewards. (Pls.' 56.1 ¶ 66.) Both Frattarelli and Podesta defendants argue that Frattarelli drivers were not allowed to give Podesta pay stubs to Local 282 stewards. (Frattarelli Tr. 82-85.)

The Podesta Trucking paystubs given to Mr. Ruiz reflected the salary that was required to be paid under the CBAs. (Pls.' 56.1 ¶ 67.) Plaintiffs contend that, notwithstanding that the Podesta Trucking paystubs reflected that Mr. Ruiz was paid the wages required under the CBAs, Mr. Ruiz never received the required contractual wages or had the required contributions to the Funds made on his behalf. (Pls.' 56.1 ¶ 68.) Plaintiffs assert that although some hours were paid to the Funds on behalf of Mr. Ruiz, not all the contributions that were required under the CBA were paid. (Pls.' 56.1 ¶ 69.) Frattarelli defendants contend that they paid all of its employees the same rate in New York that they would have been paid in New Jersey. (Frattarelli Defs.' response to Pls.' 56.1 at ¶ 68.) Frattarelli defendants further contend that all required contributions were paid on behalf its drivers to the Funds every month. (*Id.*) However, the deposition passages cited by Frattarelli defendants do not support their position. (Frattarelli Tr., 51.)

Mr. Ruiz complained to Frattarelli about the fact that not all his hours were being reported to the funds. (Pls.' 56.1 ¶ 70.) Frattarelli's response to Mr. Ruiz's complaints was to state that additional complaints would result in Mr. Ruiz not being able to work in New York City going forward. (Pls.' 56.1 ¶ 71.) No contributions were made on behalf of Mr. Ruiz if he worked in New Jersey. (Pls.' 56.1 ¶ 72.)

Mr. Ruiz's working conditions did not change when he began receiving pay stubs from Podesta Trucking. (Pls.' 56.1 ¶ 73.) Specifically, although Mr. Ruiz was receiving paystubs from Podesta Trucking, he continued to drive the same truck as when he was receiving pay stubs from Frattarelli. (Pls.' 56.1 ¶ 74.) Plaintiffs contend that after Mr. Ruiz began to receive paystubs from Podesta Trucking, the truck that he had previously driven was changed so as to say "Podesta Trucking" underneath the magnetic "Frattarelli Brothers" sign. (Pls.' 56.1 ¶ 85.) Frattarelli instructed Mr. Ruiz to take the magnetic "Frattarelli Brothers" sign off the truck as he entered New York City. (Pls.' 56.1 ¶ 86.)

Although Mr. Ruiz was receiving paystubs from Podesta Trucking, he continued to report to the same trucking depot as he did when he was receiving paystubs from Frattarelli Brothers. (Pls.' 56.1 ¶ 75.) Mr. Ruiz continued to receive pay checks from Jeanette Coppa, the same individual who gave Mr. Ruiz his paychecks when he was receiving paystubs from Frattarelli Brothers. (Pls.' 56.1 ¶ 76.) Podesta had no responsibility for supervising Frattarelli Brothers's drivers, and Mr. Ruiz continued to be supervised by Frattarelli Brothers even while receiving Podesta paystubs. (Pls.' 56.1 ¶¶ 77, 78.)

Plaintiffs assert that Frattarelli was present at most job sites, and he gave instructions at those job sites. (Pls.' 56.1 ¶ 81.) Frattarelli defendants appear to take issue with the allegation that Frattarelli gave instructions at the job sites. (Frattarelli Defs.' Response to Pls.' 56.1 ¶ 81.) However, the portion of Frattarelli's deposition transcript offered by defendants does not contradict plaintiffs' assertion. (Frattarelli Tr., 36.) Podesta was never present at any of the job sites. (Pls.' 56.1 ¶ 82.)

At some point, Mr. Ruiz ceased being paid by Frattarelli Brothers and began to be paid by Bergen Topsoil Corp. ("BTC"). (Pls.' 56.1 ¶ 87.) In or around 2000, 2001, or 2002, the State of New Jersey determined that Frattarelli Brothers underpaid its employees. (Pls.' 56.1 ¶ 88.)

6. Hugo Carvajal's Employment with Frattarelli Brothers

Hugo Carvajal worked as a driver for Frattarelli Brothers from 1997 to 2001. (Pls.' 56.1 ¶ 89.) After becoming employed by Frattarelli Brothers, Frattarelli sent Mr. Carvajal to Local 282 to renew his union membership, and Frattarelli paid the requisite membership fees. (Pls.' 56.1 ¶ 90.) During periods of time while employed by Frattarelli Brothers, Carvajal did not receive wages and benefits in accordance with the CBAs. (Pls.' 56.1 ¶ 91.) While employed by Frattarelli Brothers, Mr. Carvajal worked primarily at job sites in New York City at which a Local 282 steward was present. (Pls.' 56.1 ¶ 92.) Mr. Carvajal's work involved picking up material from construction sites. (*Id.*) Mr. Carvajal signed in at such job sites under the name Podesta Trucking because Podesta Trucking had a CBA. (Pls.' 56.1 ¶ 93.) Notwithstanding that he signed in at job sites

under Podesta Trucking, Mr. Carvajal understood that he was not employed by Podesta Trucking, and that Frattarelli Brothers remained responsible for the job. (Pls.' 56.1 ¶ 94.)

During the period from 1997 to 2001, Frattarelli supervised Mr. Carvajal. (Pls.' 56.1 ¶ 95.) Podesta did not supervise Mr. Carvajal while Mr. Carvajal was employed by Frattarelli Brothers. (Pls.' 56.1 ¶ 96.) The delivery tickets that Mr. Carvajal gave to customers to sign were Frattarelli tickets. (Pls.' 56.1 ¶ 97.) He never had Podesta Trucking tickets. (*Id.*) Mr. Carvajal received unemployment benefits after his employment with Frattarelli Brothers was terminated. (Pls.' 56.1 ¶ 98.) These unemployment benefits were received through his employment with Frattarelli Brothers. (*Id.*)

### 7. The Local 282 Corruption Officer's Investigation, the Indictment of Mr. Frattarelli by the Manhattan District Attorney and Subsequent Guilty Plea

Frattarelli was the subject of an investigation by Robert Machado, the Local 282 Corruption Officer, for defrauding the Funds and not paying the proper wages to drivers. (Pls.' 56.1 ¶ 99.) According to Mr. Machado, (1) the investigation revealed that drivers on a job site through Podesta Trucking were actually working at the direction of Frattarelli (Pls.' 56.1 ¶ 100); and (2) the investigation also revealed that Frattarelli Brothers submitted false pay stubs to on-site stewards. (Pls.' 56.1 ¶ 101.) At some point Corruption Officer Machado advised the Manhattan District Attorney's office of the results of his investigation. (Pls.' 56.1 ¶ 102.)

On or about June 24, 2004, the Manhattan District Attorney announced that Frattarelli had been indicted in connection with his activities at a project in Columbus Circle in Manhattan. The District Attorney reported that his investigation revealed that, in order to avoid making all contribution payments due and owing the Funds while simultaneously securing work for which such contribution payments were due and owing the Funds, Frattarelli falsified the daily worksheets that were submitted to Local 282 at the Columbus Circle project. (Pls.' 56.1 ¶ 103.) Frattarelli subsequently plead guilty to one charge of falsifying records. (Pls.' 56.1 ¶ 104.) The plea was made in court in the presence of Frattarelli's attorney. (*Id.*)

### 8. Bergen Topsoil Corp.

Frattarelli Brothers ceased operating in or around 2001. (Pls.' 56.1 ¶ 105.) The company that had been operated as Frattarelli Brothers is now operated by Frattarelli's son and Frattarelli's niece as Bergen Topsoil Corp. or BTC. (Pls.' 56.1 ¶ 106.) BTC and Bergen Topsoil Corp. are one and the same company. (Pls.' 56.1 ¶ 107.)

Plaintiffs contend that Bergen Topsoil took over jobs that Frattarelli Brothers had been handling at the time it ceased operating, and Frattarelli reported to those job sites on behalf of Bergen Topsoil. (Pls.' 56.1 ¶ 108.) Frattarelli defendants argue that Frattarelli reported to no more than two of those job sites, one at Columbia Circle and one on 44th Street in Manhattan, on behalf of Bergen Topsoil as an unpaid consultant. (Frattarelli Tr., at 41-43.)

In exchange for transferring construction equipment and trucks from Frattarelli Brothers to Bergen Topsoil, Frattarelli Brothers received a note from Bergen Topsoil. (Pls.' 56.1 ¶ 109.) Bergen Topsoil has not made a

payment on the note. (Pls.' 56.1 ¶ 110.) Frattarelli Brothers continues to insure the trucks that were previously owned by Frattarelli Brothers and transferred to Bergen Topsoil. (Pls.' 56.1 ¶ 111.) Bergen Topsoil was located at the same location as Frattarelli Brothers (206 Washington Avenue, Carlstadt, New Jersey). (Pls.' 56.1 ¶ 112.) Jeanette Coppa performs the same services for Bergen Topsoil that she performed for Frattarelli Brothers. (Pls.' 56.1 ¶ 113.) In addition, another Frattarelli Brothers' family member/employee, Mel Lang, also performs the same services for Bergen Topsoil that he previously performed for Frattarelli Brothers. (*Id.*) Frattarelli performs consulting services for Bergen Topsoil for which he is not reimbursed. (Pls.' 56.1 ¶ 114.)

### 9. The Limited Audit of Records of Four Customers

The Trustees' auditor determined a partial amount due to the Funds based on a review of defendants' work for Urban Foundation Engineering LLC, Mayrich Construction Co., Breeze National Inc., and Civetta Cousins JV. (Pls.' 56.1 ¶ 115.) Plaintiffs assert that the Trustees' auditor reviewed records regarding the above-named four customers, and determined that the amount of contributions due the Funds based on work for these customers is $937,446.56. (Pls.' 56.1 ¶ 116.) Plaintiffs further assert that the total interest due through July 31, 2006 is $868,543.08. (*Id.*) Frattarelli defendants dispute these calculations because access has not been given to the shop steward records. (Frattarelli Defs.' response to Pls.' 56.1 ¶ 116.) Frattarelli Brothers had many customers in addition to the four customers whose records were reviewed in the audit. (Pls.' 56.1 ¶ 117.)

### B. Procedural History

On March 24, 2005, plaintiffs filed their complaint. On May 13, 2005, Frattarelli defendants filed their answer. On May 20, 2005, Podesta defendants filed their answer. On May 23, 2005, Podesta defendants re-filed their answer. On August 15, 2007, plaintiffs filed an amended complaint against all defendants. On August 27, 2007, Frattarelli defendants filed their answer to the amended complaint and affirmative defenses. On November 1, 2007, Podesta defendants filed their answer to the amended complaint. On December 3, 2007, plaintiffs moved for partial summary judgment. On January 17, 2008, Frattarelli and Podesta defendants filed their opposition. On February 19, 2008, plaintiffs filed their reply. Oral argument was held on May 16, 2008.

## II. SUMMARY JUDGMENT STANDARD

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.,* 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments."

*Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable. . . ., or is not significantly probative. . . ., summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted); *Tufariello v. Long Island R.R.*, 364 F. Supp. 2d 252, 256 (E.D.N.Y. 2005). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

III. DISCUSSION

A. Corporate Defendants' Joint and Several Liability To The Funds Based On Their Alleged Single Employer Status

Plaintiffs argue that Frattarelli Brothers and Podesta Trucking acted as a single unit and, therefore, should be treated as a single employer bound by Podesta's obligations under the CBA. Defendants argue that single employer status does not apply because the companies operated independently. As set forth below, although defendants dispute certain details regarding the relationship between the two entities, none of these factual issues undermine the undisputed evidence which establishes that Fratterelli Brothers and Podesta Trucking operated as a single employer and a single bargaining unit. Therefore, summary judgment on this issue is warranted.

The Second Circuit has held that "a collective bargaining agreement may be enforced against non-signatory employers if the employers constitute a 'single employer' and if the employees of the companies constitute a single appropriate bargaining unit." *Brown v. Sandimo Materials*, 250 F.3d 120, 129 n.2 (2d Cir. 2001). "Separate companies are considered a 'single employer' if they are 'part of a single integrated enterprise.'" *Lihli Fashions Corp. v. NLRB*, 80 F.3d 743, 747 (2d Cir. 1996) (citations omitted). In *Radio & Television Broadcast Technicians Local Union v. Broadcast Service of Mobile, Inc.*, 380 U.S. 255, 256 (1965) (*per curiam*), the Court established a four-factor test to determine "single employer" status. These four factors include "interrelation of operations, common management, centralized control of labor relations and common ownership." *Id.* Courts may also consider

11

family connections and the common use of facilities and equipment. *See Lihli Fashions Corp.,* 80 F.3d at 747; *see also Three Sisters Sportswear Co.,* 312 N.L.R.B. 853, 1993 WL 398465, at *15 (N.L.R.B. Sept. 30, 1993); *Goodman Inv. Co.,* 292 N.L.R.B. 340, 1989 WL 223774 at *10-11 (N.L.R.B. Jan. 17, 1989). "Ultimately single employer status depends on all the circumstances of the case and is characterized by absence of an 'arm's length relationship found among unintegrated companies.'" *Lihli Fashions Corp.,* 80 F.3d at 747. (citation omitted).

The undisputed facts in this case demonstrate that, as a matter of law, Podesta Trucking and Frattarelli brothers are a single employer. An arm's length business relationship did not exist between the two parties. Podesta Trucking essentially operated as a shell company through which Frattarelli Brothers could conduct business in New York City on union jobs. Podesta Trucking's operations, to the extent they had any independent operations, were almost completely intertwined with Frattarelli Brothers. There is no evidence of an arms length relationship between the defendants. In fact, it appears that the relationship was motivated by their close personal friendship. *See* Podesta Dep. 23:6-12, Nov. 4, 2005.

The undisputed facts in this case also establish that Podesta Trucking and Frattarelli Brothers have highly integrated operations. Podesta Trucking and Frattarelli Brothers share substantially the same business purpose. Both Podesta Trucking and Frattarelli Brothers are in the business of picking up construction materials from New York City job sites. S*ee* Reply Br. 14.

In addition, it is undisputed that Podesta Trucking, for the entire period that it was in existence, never had any customers. Between the signing of the CBA in 1997 and the hiring of Louise Cabrera in 1999, Podesta Trucking did not do any work. Although Podesta Trucking signed the CBA in 1997 with the expectation of having New York City customers, these jobs never materialized. Specifically, Podesta explicitly stated during his deposition:

> Q: Can you identify a single customer?
>
> A: I had no clients. I never had any customers.
>
> Q: You never had any customers?
>
> A: No.
>
> Q: So the work done by Mr. Cabrera your driver, did he only work on jobs that were Frattarelli jobs?
>
> A: When he worked in New York here, yes.
>
> Q. So Mr. Cabrera only worked in New York?
>
> A: Yes.

Podesta Dep. 46:19-47:18, Nov. 4, 2005. It is clear from the undisputed facts that Podesta Trucking had no customers and all New York jobs were serviced by Frattarelli using the Podesta Trucking name and CBA.

The operations of the two companies also substantially overlap. Frattarelli Brothers prepared the remittance reports that were submitted to plaintiffs on behalf of Podesta

Trucking. The drivers who were reported to the funds as having worked for Podesta Trucking were drivers for Frattarelli Brothers. On those jobs for which Frattarelli Brothers's drivers were told to tell the stewards they were working for Podesta trucking, the drivers used Frattarelli Brothers's trucks and billed the customers for the work. Further evidencing the connectivity of operation between the companies, Frattarelli Brothers ordered checks on behalf of Podesta Trucking. Podesta defendants admit that Podesta Trucking gave Podesta Trucking pay stubs to drivers, but then paid them with Frattarelli Brothers's checks. Further, although payment to the Funds was submitted by Podesta Trucking, Frattarelli Brothers actually paid the contributions to the Funds for the Frattarelli Brothers's drivers, and any tax liabilities which may have been incurred by Podesta Trucking. For example, Podesta testified at his deposition:

> Q: Did Frattarelli pay the wages of drivers employed by Frattarelli who were on the payroll of Podesta?
>
> A: Yes.
>
> Q: Did Frattarelli pay them with Podesta checks or Frattarelli checks?
>
> A: Checks from Frattarelli. The only thing that was paid with Podesta was union deductions and company taxes.
>
> Q: And for company taxes and deductions for the union, did the money come from Frattarelli Brothers?
>
> A: Yes.
>
> Q: And [] how did that work operationally? Did you submit any paperwork to Mr. Frattarelli, in the ordinary course of business to let him know how much money he had to pay Podesta for taxes, and what you call union deductions.
>
> A: The union - the forms for the union were filled out in Frattarelli's office and the only thing that I did was sign the checks.

Podesta Dep. 39:12-40:10, Nov. 4, 2005. It is clear from Podesta's testimony that the operations of Frattarelli Brothers and Podesta Trucking substantially overlapped.

As to centralized control over labor relations, courts look to the following factors:

> whether the companies have separate human resources departments and whether the entity "establishes its own policies and makes its own decisions as to the hiring, discipline, and termination of its employees." *Duffy* [*v. Drake Beam Morin, Harcourt General, Inc.,* No. 96 Civ. 5606], 1998 WL 252063, at *4 [(S.D.N.Y. May 19, 1998)]... Other relevant factors include whether employment applications are sent to the other entity, whether the other entity must clear all major employment decisions, and

whether the entities shift employees back and forth. *See Meng* [*v. Ipanema Shoe Corp.*]*,* 73 F. Supp. 2d [392,] 403 [(S.D.N.Y. 1999)] (citations omitted); *see also Schade* [*v. Coty, Inc.,* No. 00 Civ. 1568], 2001 WL 709258, at *8 [(S.D.N.Y. June 20, 2001)] (giving same factors).

*Laurin v. Pokoik,* No. 02 Civ. 1938 (LMM), 2004 WL 513999, at *6 (S.D.N.Y. Mar. 15, 2004)*.* The undisputed facts show that all of the workers who were reported to the Funds as having worked for Podesta Trucking were actually drivers for Frattarelli Brothers. To the extent Podesta's employee (Louis Cabrera) worked, such work was done for Frattarelli Brothers. Frattarelli, not Podesta, supervised all Frattarelli jobs. Podesta admits that his only role was to sign the checks and remittance reports that were submitted to the funds. It is clear from these undisputed facts that employee decisions were entirely made through Frattarelli Brothers.

The common ownership factors and common management facts are "accorded less weight by the courts." *Laurin,* 2004 WL 513999, at * 8; *see also Meng*, 73 F. Supp. 2d at 403 (discussing parent/subsidiary relationship) (citing *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997)). In this case, Podesta Trucking is owned solely by Rogelio Podesta and Frattarelli Brothers is owned in part by Vincent Frattarelli. There is no common ownership between the two companies. However, despite the lack of common ownership, the undisputed facts establish that Frattarelli Brothers and Podesta Trucking did not have an arm's length relationship and are an integrated, "single employer" for all the reasons discussed above.

*See Labarbera v. Cretty Enters.,* No. 03-6112, 05-5178 (DRH)(ARL), 2007 WL 4232765, at *5 (E.D.N.Y. Nov. 28, 2007) (holding that the single employer doctrine applies where companies are in the same business, use the same trucks, same accountant, same office staff and exchange drivers.)

The second requirement is that there is a single bargaining unit. The Second has explained this requirement as follows:

> As the Supreme Court held in *South Prairie Construction Co. v. International Union of Operating Engineers*, 425 U.S. 800 (1976) (*per curiam*), for one company to be bound by a collective bargaining agreement made by another company, it must be shown not only that they are a 'single employer,' but, additionally, that together they represent an appropriate employee bargaining unit. *Id.* at 804-05; *see also Truck Drivers Local Union No. 807, I.B.T. v. Reg'l Import & Export Trucking Co.*, 944 F.2d 1037, 1046 (2d Cir.1991) (holding that 'single employer/single unit doctrine' has 'the same binding effect on a non-signatory' as the 'alter ego doctrine'); *Local One Amalgamated Lithographers of Am. v. Stearns & Beale, Inc.*, 812 F.2d 763, 769 (2d Cir. 1987) ('[T]o bind a non-signatory company to a collective bargaining agreement, both single employer and single bargaining unit status must be

found.').

*Lihli Fashions Corp.,* 80 F.3d at 747-48.

In determining whether the employees represent a single bargaining unit, the Court must look to the following factors: "operational integration, geographic proximity, common supervision, similarity in job function and degree of employee interchange." *Brown,* 250 F.3d at 129 n.2. The Court finds that, as described in detail above, the operational integration, common supervision, and employee interchange are all present in this case based upon the undisputed facts.

In sum, the undisputed facts show that Podesta Trucking and Frattarelli Brothers are a single employer and that together they constitute an appropriate bargaining unit.[6]

### B. Individual Liability of Frattarelli and Podesta for the Unpaid Contributions and Attendant Damages

Plaintiffs claim that Podesta and Frattarelli should be held liable as individuals for Podesta Trucking's and Frattarelli Brothers's alleged failure to contribute to the Funds. Specifically, plaintiffs argue that Podesta and Frattarelli are controlling corporate officials who conspired to defraud the Funds. In opposition, Podesta and Frattarelli defendants argue, among other things, that defendants did not engage in a fraudulent scheme.

---

[6] Though plaintiff provides additional arguments under theories of alter ego and joint employer, having found that there is no genuine issue of material fact as to whether Frattarelli Brothers and Podesta Trucking are a single employer, the Court need not address those issues.

As a general matter, "an individual is not liable for corporate ERISA obligations solely by virtue of his role as officer, shareholder, or manager." *Sasso v. Cervoni*, 985 F.2d 49, 50 (2d Cir. 1993). The court must determine whether "special circumstances, beyond an individual's officer status or corporate duties, might warrant the imposition of personal liability for a corporation's ERISA obligations." *Id.* at 50 (citing *Lowen v. Tower Asset Mgmt.*, 829 F.2d 1209 (2d Cir. 1987)); *Leddy v. Standard Drywall, Inc.*, 875 F.2d 383 (2d Cir. 1989)). These "special circumstances" include: (1) knowingly participating in a fiduciary's breach of ERISA trust obligations; (2) conspiring to divert ERISA funds for personal benefit; (3) intermingling personal and corporate assets; (4) engaging in fraudulent conduct; or (5) where the individual is in fact the corporation or the corporation's alter ego.

The Court must conduct a two-step inquiry to determine whether corporate officials should be held personally liable for the fraudulent conduct. *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v. Lollo*, 35 F.3d 29, 33 (2d Cir. 1994); *Trs. of the Bldg. Serv. 32B-J Pension, Health and Annuity Funds v. Hudson Serv. Corp.*, 871 F. Supp. 631, 638 (S.D.N.Y. 1994); *Solomon v. R. Mignon & Sons, Inc.*, No. 94 Civ. 1344, 1994 WL 538617, *2, (S.D.N.Y. Oct. 3, 1994). First, the Court must determine whether the individual defendants are "controlling corporate officials." *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund*, 35 F.3d at 33. In determining whether the defendants are "controlling corporate officials" the Court must "examine the officer's actual role in the company's affairs and relationship to the company's

wrongdoing." *Id.* Second, the court must determine whether the common law element of fraud have be established, which include: (1) a material false representation or omission of an existing fact; (2) knowledge of the falsity; (3) intent to defraud; (4) reasonable reliance; and (5) damages. *Id.* (citing *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 276 (2d Cir.1992)).

Applying this standard, the first requirement of "controlling corporate official" is met as to both Podesta and Frattarelli. Podesta and Frattarelli are both clearly controlling corporate officials. It is undisputed that Podesta is the sole owner of Podesta Trucking. (Pls.' 56.1 ¶ 10.) Further, Podesta signed remittance reports on behalf of Podesta Trucking and submitted them to the Funds. (Pls.' 56.1 ¶¶ 14,15.) It is also undisputed that Vincent Frattarelli is one of two owners of Frattarelli Brothers and serves as the President and Director. (Pls.' 56.1 ¶¶ 24, 25.) Further, Frattarelli was principally responsible for the daily operations of Frattarelli Brothers. (Pls.' 56.1 ¶ 26.) Therefore the Court finds that the first requirement for individual liability is satisfied.

As to the second requirement, regarding the common law elements of fraud, the Court finds that there a numerous material factual disputes that preclude summary judgment in plaintiffs' favor. For example, although plaintiffs contend that plaintiffs intended to defraud the Funds, Frattarelli contends that, at most, he misunderstood the circumstances under which benefit contributions were owed. In particular, Frattarelli testified that he considered union jobs to be those jobs at which a union foreman was present. *See* Frattarelli Tr. at 43-45, 49-50, 52-53. For such jobs, Frattarelli would remit contributions to the benefit funds. *See id.*

Frattarelli also explained that for those jobs where a Local 282 on-site steward was not present, such job was a "non-union job" and, therefore, no benefit fund contributions were owed for the hours worked. Frattarelli Tr. 45-46. Similarly, Podesta testified that he agreed to allow Frattarelli to work under Podesta Truckings CBAs because "[Frattarelli] was a friend of mine and he asked can I worked under your name, I said 'Yeah go ahead', because he was going to pay all the costs." Podesta Dep. 38:17 - 39:3, Nov. 4, 2005. Podesta testified that he believed these costs included "things of the union. The companies taxes and everything." *Id.* The testimony by Frattarelli and Podesta create material issues of fact as to whether their was intent to defraud the Funds. There are also disputed issues of fact relating to other elements of the fraud claim, such as whether the Funds reasonably relied upon any of the alleged misrepresentations by defendants, as well as the existence of damages. Defendants have proffered sufficient factual evidence regarding these issues to warrant a trial. Therefore, the Court finds that summary judgment is inappropriate at this time on the issue of whether Podesta and/or Frattarelli should be held personally liable for any unpaid contributions.

IV. CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted in part and denied in part. In particular, plaintiffs' motion for summary judgment on the issue of whether Podesta Trucking and Frattarelli Brothers constituted a single employer is GRANTED. Plaintiffs' motion for summary judgment on the issue of whether Podesta and Frattarelli should be individually liable for the alleged fraud on the Funds is DENIED. The Joint Pre-trial Order

is due to the Court August 18, 2008.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 17, 2008
Central Islip, New York

\* \* \*

The attorneys for plaintiffs are Bruce S. Levine and Chester Broman of Cohen, Weiss and Simon, LLP, 330 West 42nd Street, New York, NY 10036. The attorneys for defendants Frattarelli Brothers, Inc. and Vincent Frattarelli are Bryan Mathew Churgin of Littler Mendelson, One Gateway Center, 3rd Floor, Newark, NJ 07102. The attorneys for defendants Podesta Trucking Construction Corp. and Rogelio Podesta are Brett R. Leitner of Sedgwick, Detert, Moran & Arnold LLP, 125 Broad Street, 39th Floor, New York, NY 10004 and Leonard K. Herman, 75 Euclid Ave., Ardsley, NY 10502.