UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 05-CV-1551 (JFB) (AKT)

_____

Frank H. Finkel, Chester Broman, Joseph A. Ferrara Sr., Alexander E. Gettler, Gary La Barbera, Lawrence Kudla, Thomas Gesualdi, and Paul Gattus, as Trustees and Fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Fund.

Plaintiffs,

versus

Frattarelli Brothers, Inc., Podesta Trucking Corp., d/b/a Podesta Trucking Construction Corp., Vincent Frattarelli, and Rogelio Podesta,

Defendants.

_____

**MEMORANDUM AND ORDER**
September 15, 2010

_____

Joseph F. Bianco, District Judge:

Plaintiffs Frank H. Finkel, Chester Broman, Joseph A. Ferrara Sr., Alexander E. Gettler, Gary La Barbera, Lawrence Kudla, Thomas Gesualdi, and Paul Gattus, as Trustees and Fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Fund (hereinafter "plaintiffs" or "the Funds") bring this action alleging that Frattarelli Brothers Inc. ("Frattarelli Brothers"), Podesta Trucking Corp. ("Podesta Trucking"), and individual defendants Vincent Frattarelli and Rogelio Podesta ("defendants"), through a coordinated fraudulent scheme, failed to pay contribution obligations to the Funds as required by Podesta Trucking's collective-bargaining agreement with Building Material Teamsters Local 282 ("Local 282" or the "Union"). Plaintiffs seek injunctive and monetary relief under Sections 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§

1132 and 1145.

Defendants seek to disqualify Bruce Levine, Elizabeth O'Leary, and their law firm of Cohen, Weiss & Simon, LLP ("Cohen Weiss") as counsel for plaintiffs. Defendants contend that Cohen Weiss's continued representation of plaintiffs violates the witness-advocate rule and also presents a conflict of interest because of Cohen Weiss's representation of the Funds in connection with the evaluation of double-breasted operations within Local 282. For the following reasons, defendants' motion is denied.

I. BACKGROUND

The Court assumes familiarity with the facts of the underlying case, as set forth in detail in the Court's Memorandum and Order dated June 17, 2008. Accordingly, only the procedural history that is relevant to the pending motion is outlined below.

The plaintiffs filed their complaint in this action on March 24, 2005. On June 17, 2008, after briefing and oral argument by both parties, this Court granted in part and denied in part plaintiffs' motion for summary judgment. Discovery was reopened from September 4, 2008 until November 28, 2008, after which point the parties submitted their proposed joint pretrial order on December 3, 2008.

The trial date has been held in abeyance because of Mr. Frattarelli's serious medical condition. In addition, a motion by defendants' counsel to reopen discovery is pending before Magistrate Judge Tomlinson.

On September 8, 2009, the Court held a pre-motion conference and set a briefing schedule for the instant motion to disqualify. On September 11, 2009, defendants filed their motion to disqualify plaintiffs' counsel. Plaintiffs filed their opposition to defendants' motion on October 2, 2009, and defendants filed their reply on October 21, 2009. This motion is fully submitted.

II. DISCUSSION

A. Standard for Disqualification of Counsel

Disqualification is viewed "with disfavor in this Circuit," *Bennett Silvershein Associates v. Furman*, 776 F. Supp. 800, 802 (S.D.N.Y. 1991), because it impinges on a "client's right freely to choose his counsel." *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983) (citation omitted). In particular, the Second Circuit has noted the "high standard of proof" required for disqualification motions because, among other things, they are "often interposed for tactical reasons," and "even when made in the best of faith, such motions inevitably cause delay." *Id.* at 791-92 (internal quotation marks and citation omitted); *accord Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978).

Nevertheless, the disqualification of counsel "is a matter committed to the sound discretion of the district court." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). A federal court's power to disqualify an attorney derives from its "inherent power to 'preserve the integrity of the adversary process,'" *Hempstead Video, Inc. v. Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Board of Education of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)), and is only appropriate where allowing the representation to continue would pose a "significant risk of trial taint." *Glueck*

*v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981). In exercising this power, courts look for "general guidance" to the American Bar Association ("ABA") and state disciplinary rules, although the Second Circuit has emphasized that "not every violation of a disciplinary rule will necessarily lead to disqualification." *Hempstead Video*, 409 F.3d at 132.[1]

B. Grounds for Disqualification

1. The Witness-Advocate Rule

(a) Standard

The witness-advocate rule, set forth in Rule 3.7 of the New York Rules of Professional Conduct, provides, with certain exceptions, that "[a] lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." N.Y. Rules Prof'l Conduct R. 3.7(a);[2] *see also Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 283 (2d Cir. 2004) ("[W]hen one individual assumes the role of both advocate and witness it '[may] so blur[ ] the line between argument and evidence that the jury's ability to find facts is undermined.'" (quoting *United States v. Arrington*, 867 F.2d 122, 126 (2d Cir. 1989) (alterations in original))); *MacArthur v. Bank of N.Y.*, 524 F. Supp. 1205, 1208 (S.D.N.Y. 1981) ("A jury may view an attorney as possessing special knowledge of a case and therefore accord a testifying attorney's arguments undue weight.").

Disqualification under subsection (a) is triggered only when the attorney actually serves as an advocate before the jury. *See Murray v. Met. Life Ins. Co.*, 583 F.3d 173, 179 (2d Cir. 2009); *see also Ramey*, 378 F.3d at 282 ("The advocate-witness rule applies, first and foremost, where the attorney representing the client before a jury seeks to serve as a fact witness *in that very proceeding*." (emphasis in original)). Additionally, disqualification is warranted

---

[1] The Court also notes that Civil Rule 1.5(b)(5) of the Local Rules of the U.S. District Courts for the Southern and Eastern Districts of New York binds attorneys appearing before those courts to the New York State Rules of Professional Conduct. *See* Local Civ. R. 1.5(b)(5). Moreover, although the Canons of the Code of Professional Responsibility in the State of New York have been replaced with the newly implemented New York State Rules of Professional Conduct, the Court notes that the case authority interpreting the old canons continues to be probative on issues that are analyzed under the new rules, especially where (as with the applicable rules in the instant case) the new rule generally incorporates the substance of the old canons. *See, e.g., Pierce & Weiss, LLP v. Subrogation Partners LLC*, 701 F. Supp. 2d 245, 251 (E.D.N.Y. 2010) ("Even though the Canons have been replaced by the New York Rules of Professional Conduct, the new rules still incorporate much of the substance of the old rules. Therefore, much of the precedent interpreting the old rules still remains applicable." (citation omitted)).

[2] This prohibition is subject to five exceptions. Specifically, an attorney may act as both witness and advocate before the same tribunal if: "(1) the testimony relates solely to an uncontested issue; (2) the testimony relates solely to the nature and value of legal services rendered in the matter; (3) disqualification of the lawyer would work substantial hardship on the client; (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or (5) the testimony is authorized by the tribunal." *Id.* at R. 3.7(a)(1)-(5).

3

only where the testimony given by counsel is "necessary." *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) (internal quotation marks and citation omitted); *see also Capponi v. Murphy*, No. 08 Civ. 4449 (VM), 2009 WL 2957804, at *10 (S.D.N.Y. Sept. 11, 2009) ("Courts have interpreted [the witness-advocate rule] to require disqualification where the attorney's testimony is necessary." (internal quotation marks omitted)). When considering the necessity of testimony, "[a] court should examine factors such as the significance of the matters, weight of the testimony, and availability of other evidence." *Kubin v. Miller*, 801 F. Supp. 1101, 1113 (S.D.N.Y. 1992) (internal quotation marks and citation omitted).

Furthermore, to the extent that the attorney would not be providing testimony on his client's behalf, the party seeking to disqualify the attorney must show that there is a substantial likelihood that the testimony would be prejudicial to the witness-advocate's client. *See Murray*, 583 F.3d at 178 ("The movant, therefore, 'bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring [to the witness-advocate's client] is substantial.'" (quoting *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989) (alteration in original))). Prejudice exists where the testimony would be "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Lamborn*, 873 F.2d at 531 (citation omitted).

Subsection (b) of Rule 3.7 addresses imputation and provides that:

> A lawyer may not act as advocate before a tribunal in a matter if another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client.

N.Y. Rules Prof'l Conduct R. 3.7(b)(1). In imputation cases, the party seeking to disqualify an entire law firm must show "by clear and convincing evidence that [A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result." *Murray*, 583 F.3d at 178-79. In addition, as under subsection (a), the moving party must demonstrate that the lawyer-witness is "likely to be called" to testify on a "significant issue." N.Y. Rules Prof'l Conduct R. 3.7(b)(1). As already noted, this language has been "interpreted . . . to require disqualification only when it is likely that the testimony to be given by the witness is necessary." *Ross v. Blitzer*, No. 09 Civ. 8666 (HB), 2009 WL 4907062, at *2 (S.D.N.Y. Dec. 21, 2009) (internal quotation marks omitted) (denying motion to disqualify law firm as premature because movant had not yet demonstrated that counsel's testimony would be necessary or prejudicial); *see also Capponi*, 2009 WL 2957804, at *10.

Because either subsection of Rule 3.7 "lends itself to opportunistic abuse," motions brought under this rule are especially "subject to fairly strict scrutiny." *Murray*, 583 F.3d at 178 (citation omitted). In particular, motions to disqualify by imputation should be granted "sparingly . . . and only when the concerns motivating the rule are at their most acute," *id.* (internal citation omitted), because "'the tribunal is not likely to be misled when a

4

lawyer acts as advocate in a trial in which another lawyer in the lawyer's firm will testify as a necessary witness.'" *Id.* (quoting Model Rules of Prof'l Conduct R. 3.7 cmt. 5).

Finally, the Court is aware that the "Second Circuit in particular has repeatedly indicated that [the New York disciplinary rules] are not to be rigidly applied," *Renner v. Townsend Financial Services Corp.*, No. 98-cv-926 (CSH), 2002 WL 1013234, at *6 (S.D.N.Y. May 20, 2002) (citation omitted), and thus looks to Rule 3.7 of the New York Rules of Professional Conduct solely for guidance as to the Court's exercise of its discretion. *See Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C.*, 440 F. Supp. 2d 303, 313 (S.D.N.Y. 2006) (discussing ethical provisions relating to witness-advocate rule).

(b) Application

Defendants seek disqualification of Cohen Weiss on the ground that Bruce Levine and potentially other members of the firm, including trial counsel Elizabeth O'Leary, may be called to testify regarding three issues: "(i) their knowledge about and experience with double-breasting in the construction industry; (ii) the nature and extent to which double-breasted operations were permitted to exist within the Local 282 landscape; and (iii) why, if the Funds were on notice of a potential double-breasted operation involving Defendants as early as 1999, they allowed the operation to continue for so many years without objection." (Defs.' Mem. of Law at 2.)[3]   Defendants claim that counsel's testimony on these issues goes the core of their defense, namely, that they believed they were operating a lawful double-breasted operation and did not intend to defraud Local 282 officials. (*See id.* at 2-3; *cf.* Letter dated July 9, 2009 from Stacey Adams to Judge Bianco [Docket No. 153] ("Defs.' July 2009 Letter").) For the reasons set forth below, the Court finds defendants' arguments to be without merit and concludes that disqualification of plaintiffs' counsel under either subsection of Rule 3.7 is not warranted.

(i) Necessity of Counsel's Testimony

As an initial matter, defendants have failed to show that the testimony of Mr. Levine, Ms. O'Leary, or any other Cohen Weiss attorney would be "necessary" regarding a significant issue of fact, that is, whether defendants knowingly and intentionally defrauded the Funds. Defendants contend that testimony regarding the "industry standard" for double-breasted operations is necessary because it would establish that such operations were

---

[3] Although neither of the parties' submissions define what a "double-breasted operation" is, the Court recognizes that, for the purposes of this opinion, "double-breasting" is a practice that exists "[i]n the construction industry, and elsewhere, . . . pursuant to which a single commercial complex functions through two corporate entities; one, a corporation which is a party to a collective bargaining agreement and subject to its provisions; [and] a second non-union entity which is not subject to such an agreement." *United States for use of Tower Masonry, Inc. v. J. Kokolakis Contracting, Inc.*, No. 93 Civ. 6369 (LBS), 1995 WL 539742, at *6 (S.D.N.Y. Sept. 8, 1995). This practice, "has given rise to litigation in the labor field where the questions have been whether the non-union entity is subject to the collective bargaining agreement as the alter ego of the entity which is a party to the agreement, or what group of employees constitute an appropriate bargaining unit." *Id.* at *7.

5

allowed and condoned and that defendants "merely observed" other contractors' business practices and modeled their own operations after them, believing those practices to be proper. (Defs.' Reply at 3.) However, defendants have failed to establish that plaintiffs' counsel would be the only available witnesses on this topic. Indeed, defendants' own submission on this motion states that they intend to call "several contractors and shop stewards as witnesses . . . [on] this precise subject." (*Id.*) Where counsel's testimony would be merely cumulative of testimony provided by others, disqualification is not appropriate. *See Solow v. Conseco, Inc.*, No. 06-cv-5988 (BSJ) (THK), 2007 WL 1599151, at *4 (S.D.N.Y. June 4, 2007) ("The rule requires that a lawyer's testimony be necessary, not simply that it be the best evidence, and to that end, courts deem a lawyer's testimony necessary only if there [are] no other witnesses to the circumstances at issue." (internal quotation marks omitted) (alteration in original)); *Shabbir v. Pak. Int'l Airlines*, 443 F. Supp. 2d 299, 308 (E.D.N.Y. 2005) ("[A] lawyer who could provide only cumulative testimony may act as trial counsel." (citation omitted)); *Kubin*, 801 F. Supp. at 1113 ("[A]n attorney whose testimony would merely corroborate the testimony of others may not be subject to disqualification.").

In any event, the specific testimony that defendants seek to elicit from plaintiffs' counsel—namely, how the industry standard was created and what the process was for deciding whether to act against double-breasted operations (*see* Defs.' Mem. of Law at 10-11, 14)—is not probative on the issue of defendants' intent. To the extent that industry standard can be used to establish defendants' state of mind regarding the propriety of their operations, the only evidence that would be relevant is what defendants and perhaps other contractors perceived the standard to be, not how the standard was created or what recommendations counsel made to their clients behind closed doors. Indeed, defendants have shown no evidence that they even were aware of counsel's alleged role in developing and applying standards for evaluating double-breasting operations. To the contrary, defendants concede in their reply brief that "it was not until the Machado Report [which was issued in June 2009] . . . that Defendants realized just how involved both the *Fund Trustees and Cohen Weiss* were in creating this standard and making the decisions that governed the Funds' treatment of double-breasted operations in general and Defendants' operation in particular." (Defs.' Reply at 3; *see also* Defs.' July 2009 Letter at 2.)[4] Accordingly, given defendants' undisputed lack of interaction with Cohen Weiss and their lack of awareness regarding any involvement (or representations) by Cohen Weiss on the double-breasting issue, defendants cannot argue that their state of mind was in any way influenced by counsel's alleged recommendations.

Moreover, even if defendants were aware that counsel made certain recommendations as to how to proceed against various double-breasted operations, testimony on this subject would not prove that defendants thought their

---

[4] As described by defendants, "[t]he gravaman [sic] of the [Machado] report is that the Trustees knowingly failed to pursue contributions from C&H Materials, a non-union company allegedly engaged in an unlawful double-breasted operation with Brer-Four." (Defs.' Mem. of Law at 5.) Neither C&H Materials nor Brer-Four are associated with defendants in this case.

business structure was legal. As plaintiffs aptly point out, it is not a defense to fraud to claim that defendants thought their conduct was proper merely because other individuals also carried on their businesses fraudulently and nevertheless escaped punishment. (*See* Pls.' Opp. at 2, 10.)

Likewise, any testimony regarding why the Funds initially declined to pursue defendants is also inapposite. As a threshold matter, although defendants speculate that the Funds' inaction must mean that they affirmatively determined defendants' business structure was legal, plaintiffs have offered alternative explanations for the Funds' inaction that do not involve a determination that defendants' double-breasted operation was authorized. (*See, e.g.*, Pls.' Opp. at 12 (noting that the 1999 audit report of Podesta Trucking "provided no evidence of double-breasting that should have prompted the Trustees to take action against Defendants")). In any event, any such delay would not excuse the defendants' conduct, if such conduct is proven. It is defendants whose behavior is in question and will be scrutinized at trial, not counsel to the Funds. In short, even assuming *arguendo* that the Funds' alleged decision not to pursue defendants for some period of time has some relevance here, the simple fact that the Funds opted not to take action initially against defendants proves nothing in and of itself with regard to the legality of defendants' operation and, in turn, proves nothing about whether defendants believed their operation was proper.

Furthermore, as to Ms. O'Leary, who is currently serving as trial counsel for plaintiffs, defendants have failed to set forth with any specificity the relevant knowledge that they believe Ms. O'Leary possesses. Defendants' only allegations concerning Ms. O'Leary in particular relate to her position as "principal attorney" for the Funds and her appearance at Board meetings to report on alter-ego and double-breasting issues and to make recommendations to the Board. (Defs.' Mem. of Law at 11-12, 22-23.) All of defendants' other references to Ms. O'Leary involve conclusory statements regarding her alleged knowledge about the industry standard for double-breasted operations. (*Id.* at 11, 14-15, 20). The mere fact that Ms. O'Leary acted as an attorney for the Funds and appeared at Board meetings in that capacity does not establish that she has knowledge about double-breasting within the industry generally or that she knew why the Funds failed to take any action against defendants as early as 1999. Speculation as to the testimony that counsel would give is not sufficient to support a motion to disqualify. *See Capponi*, 2009 WL 2957804, at *11 (rejecting motion to disqualify where "Plaintiff only speculate[d] as to the nature of the testimony [counsel] would give[,] [counsel] denie[d] having any knowledge that would form the basis for testimony that would be adverse to his clients' interests . . . [and] [t]he information Plaintiff intend[ed] to solicit from [counsel might] be readily available from other sources"); *Paramount Commc'ns, Inc. v. Donaghy*, 858 F. Supp. 391, 394 (S.D.N.Y. 1994) ("Courts require parties seeking disqualification of counsel to meet a high standard of proof before disqualification may be granted, and mere speculations will not suffice." (internal quotation marks and citations omitted)).

Accordingly, defendants have failed to establish that any Cohen Weiss attorney would provide "necessary" testimony on a significant issue of fact.

7

(ii) Prejudice

On the issue of prejudice, the Court finds that any testimony given by plaintiffs' counsel, even if deemed "necessary," would not be "sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Lamborn*, 873 F.2d at 531 (citation omitted).

First, based upon plaintiffs' opposition, there is no reason to believe that counsel's testimony would be inconsistent with their clients' account of the facts. As one ground for disqualification, defendants argue that Cohen Weiss' testimony would "destroy their client's case" because it would "provide Defendants with a basis for believing they were not doing anything wrong." (Defs.' Mem. of Law at 20.) This argument appears to be based on the conclusion either that Cohen Weiss must have told the Funds that defendants' operation was legal or that Cohen Weiss must have advised their clients to pursue defendants, but the Funds nonetheless ignored the recommendation. (*Id.*; *see also* Defs.' Reply at 3.) According to defendants, either scenario is fatal to plaintiffs' case, because plaintiffs "clearly changed their position regarding the legality of Defendants' operations," and thus, testimony about any prior contradictory stances taken by the Funds would "destroy" their current position by showing that defendants were justified in believing that their operation was proper. (Defs.' Mem. of Law at 20.) This argument is inherently flawed, however, because it is based upon pure speculation about the Funds' motivation for not taking action against defendants sooner. Indeed, in their opposition, plaintiffs strongly deny that counsel would testify that they advised the Funds to take action against defendants or that they made a finding that defendants were engaged in impermissible double-breasting. (Pls.' Opp. at 11-12, 14-15.) Additionally, Officer Machado—whose report is the basis for this entire motion—testified at his deposition that "he was aware of no other instances where a suspected double-breasted operation was not pursued by the Trustees." (*Id.* at 6.) Defendants have not put forth any facts that can counter plaintiffs' opposition. For example, the audit reports that defendants point to (*see* Defs.' Mem. of Law at 15) prove nothing because subcontracting and the use of non-union outside truck hires were not *per se* illegal (*see* Pls.' Opp. at 12), as defendants themselves concede. (*See* Defs.' Reply at 1 ("[D]ouble-breasted operations are not *per se* illegal.")). Accordingly, the statements in the audit reports do not necessitate the conclusion posited by defendants, namely, that Funds were on notice of defendants' double-breasted operation and that their subsequent inaction against defendants must mean that they either ignored counsel's recommendations or concluded that defendants' operation was proper. Without evidence to support defendants' assumptions about the Funds' motivations and the facts that Cohen Weiss would testify to, this Court cannot conclude that this testimony would be prejudicial to plaintiffs' case. *See Shabbir*, 443 F. Supp. 2d at 308 ("The more speculative the potential prejudice, the less likely a court will be to grant a motion to disqualify."); *Paramount Commc'ns Inc.*, 858 F. Supp. at 398 ("The conjuring of 'perhaps possible' scenarios is inadequate grounds for a demonstration of the need to call an attorney to testify, or a demonstration that such testimony would be prejudicial.").

Furthermore, as noted earlier, the issue at trial will be whether defendants knowingly

8

and intentionally defrauded the Funds, not whether the Funds could have pursued the defendants earlier for their behavior. Even if the Funds could have taken action against the defendants as early as 1997, such a finding would not change the fact that defendants' behavior vis-a-vis the Funds was fraudulent, if such fraud were proven. Accordingly, any testimony on this subject would not be prejudicial because it would have no bearing on any ultimate determination of whether the defendants knew their double-breasted operation was improper.

Thus, under either the requirements of Rule 3.7(a) or the "considerably higher showing of prejudice" required by Rule 3.7(b), *Murray*, 583 F.3d at 179, defendants cannot demonstrate that plaintiffs would be prejudiced, or that the integrity of the judicial system would be undermined,[5] if their counsel were forced to testify.[6] In sum, given the "strict scrutiny" with which motions to disqualify must be analyzed, this Court finds that defendants' motion to disqualify under the witness-advocate rule must be denied.

2. Conflict of Interest

Defendants also argue that Cohen Weiss should be disqualified because there is a "substantial risk that Cohen Weiss' professional judgment on behalf of Plaintiffs will be clouded by its own interests—namely, avoiding a malpractice claim and protecting the firm's reputation." (Defs.' Mem. of Law at 8.) In particular, defendants are concerned that plaintiffs will assert an advice-of-counsel defense to "justify [their] actions," which will present an "inherent conflict between the attorney's desire to prove that he provided sound legal advice . . . and the client's desire to show that he relied in good faith on [that] legal advice." (*Id.* at 18.) Defendants contend this conflict requires disqualification pursuant to Rule 1.7 of the New York Rules of Professional Conduct, which provides, with certain exceptions, that "a lawyer shall not represent a client if a reasonable lawyer would conclude that . . . there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests." N.Y. Rules Prof'l Conduct R. 1.7(a)(2). The Court finds these claims to be without merit.

As a threshold matter, defendants have misapprehended the key questions that will be raised at trial. As noted *supra*, plaintiffs are under no obligation to justify the actions they took, or did not take, in relation to defendants' business operation. Instead, the focus at trial will be on *defendants'* actions and intentions. In other words, whether plaintiffs' counsel allegedly committed malpractice has no

---

[5] As noted *supra*, disqualification by imputation is proper only where the moving party demonstrates that counsel's testimony would be "so prejudicial" that, as a result of the testimony, "the integrity of the judicial system may be threatened." *Murray*, 583 F.3d at 179. This level of prejudice exists only in rare circumstances where the concerns underlying the witness-advocate rule "are at their most acute." *Id.* at 178. For the reasons already set forth herein, the Court finds that defendants have failed to meet this burden, and, therefore, have failed to show that disqualification of the entire firm of Cohen Weiss is warranted.

[6] Plaintiffs also argue, in the alternative, that the exception for "substantial hardship" under Rule 3.7 should apply because of Cohen Weiss's representation of plaintiffs in this litigation since 2005. However, the Court need not address that issue because, as discussed *supra*, there is no basis to disqualify under subsections (a) or (b) of Rule 3.7.

9

bearing on whether defendants, in their individual capacities, knowingly and intentionally defrauded the Funds.

Moreover, as with their arguments under the witness-advocate rule, defendants have offered nothing but baseless hypotheticals to support their claims that any testimony by plaintiffs' counsel regarding their advice to the Funds would "put[ ] them in a compromising position with their client" and "would likely lead to a malpractice claim against Cohen Weiss." (Defs.' Mem. of Law at 20.) Conjecture about the nature of the testimony counsel might give and about possible future malpractice claims is not sufficient to withstand the scrutiny under which a court must analyze disqualification motions. *See Sea Tow Int'l, Inc. v. Pontin*, No. 06-cv-3461 (SJF) (ETB), 2007 WL 4180679, at *6 (E.D.N.Y. Nov. 19, 2007) ("Such conclusory assertions amount to nothing more than sheer speculation as to the existence of a conflict of interest. If anything, such assertions merely bolster the argument that this motion is being made solely to achieve a strategic advantage in this litigation. As such, they fail to provide a basis for [counsel's] disqualification."); *Colandrea v. Town of Orangetown*, 490 F. Supp. 2d 342, 353 (S.D.N.Y. 2007) ("[S]peculation that a party may one day decide to sue its counsel for malpractice is hardly sufficient to meet Plaintiff's burden in arguing for the drastic remedy of disqualification."); *Cadle Co. v. Damadeo*, 256 F. Supp. 2d 155, 157 (E.D.N.Y. 2003) (denying motion to disqualify where movant provided "only conclusion allegations" as evidence of conflict of interest).

Defendants further contend that Cohen Weiss is conflicted because, in defending their actions, they will be forced to "harm[ ] the credibility of their client's chief witness." (Defs.' Mem. of Law at 20.) The Court finds defendants' logic on this point to be strained. First, there is no reason to believe that Cohen Weiss will use the trial as an opportunity to defend their reputation by refuting the allegations in Officer Machado's report. As defendants acknowledge, the report focuses on the actions of two companies (C&H Materials and Brer-Four) that are entirely unrelated to defendants' operations. (*See* Defs.' Mem. of Law at 5 (stating that "[t]he gravaman [sic] of the Report" was that C&H Materials and Brer-Four engaged in illegal double-breasting).) Accordingly, the contents of the report are irrelevant to the allegations at issue in this case, and, therefore, it is not logical to conclude that plaintiffs' counsel will focus on the report in making their case against defendants. (*See* Pls.' Opp. at 17 ("[G]iven the irrelevancy of Brer-Four to this case, the Trustees do not intend to 'attack' Machado's conclusions about Levine at trial.")). In addition, the fact that Mr. Levine has withdrawn as trial counsel in this matter makes it even less likely that Cohen Weiss will challenge Machado's conclusions about him during trial.

Second, defendants' claim that they will use Mr. Levine's testimony about Machado's report to impeach Machado at trial is based only upon bald assertions that certainly do not warrant the extreme remedy of disqualification. Specifically, defendants assert that "[i]t is safe to assume that Mr. Levine disagrees with the conclusions reached in the Machado Report—thereby suggesting that Plaintiffs' chief witness conducts investigations that are flawed and inaccurate." (Defs.' Reply at 5.) This statement represents a bold leap of logic from one assumption (that Mr. Levine necessarily disagrees with Officer Machado's findings) to another (that as a

10

result of Mr. Levine's alleged disagreement with the report, *all* of Machado's investigations must be "flawed and inaccurate"). As the Court has emphasized throughout this opinion, such speculation cannot provide grounds for disqualification—a remedy that the Second Circuit has instructed should only be granted "sparingly." *Murray*, 583 F.3d at 178. Defendants' arguments regarding plaintiff's auditing firm also must fail for the same reasons.

Furthermore, to the extent that defendants are arguing that Cohen Weiss is conflicted because of a desire to conceal the negative findings in Machado's report, the Court agrees with plaintiffs that this argument is unpersuasive. The Machado report is publicly available both on ECF and via the New York Times website,[7] and thus "[a]ny incentive to conduct the trial of this case in a manner that serves counsels' interests at plaintiffs' expense is . . . diminished." *Hogan v. Higgins*, No. 04-cv-3298 (JFB), 2008 WL 3200252, at *4 (E.D.N.Y. Aug. 5, 2008) (denying disqualification motion where letter that could subject counsel to sanctions had already been filed as exhibit to publicly filed documents and had been the subject of arguments heard in open court).

3. Other Issues

The Court has reviewed defendants' remaining arguments and also finds them to be without merit. Defendants' motion papers include one conclusory statement that any testimony by Cohen Weiss would violate Rule 1.8 of the New York Rules of Professional Conduct[8] because testifying would require counsel "to use confidential information relating to its representation of the Funds to Plaintiffs' disadvantage." (Defs.' Mem. of Law at 8.) Defendants, however, do not specify what confidential information they expect to be disclosed. To the extent that defendants seek to base this argument on the other grounds they have asserted for disqualification, the Court rejects this argument for the reasons already set forth herein.

Finally, insofar as there are no bases for disqualification under Rules 1.7 or 1.8, there is no reason to impute any alleged conflicts or violations to the entire law firm of Cohen Weiss under Rule 1.10. *See* N.Y. Rules Prof'l Conduct R. 1.10(a) ("While lawyers are associated in a firm, none of them shall knowingly represent a client *when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8* or 1.9, except as otherwise provided therein." (emphasis added)); *cf. Kubin*, 801 F. Supp. at 1114 ("[V]icarious disqualification is an extremely harsh measure which should be limited to special circumstances. . . . [I]n view of the fact that conflict of interest considerations are not present in the instant case, there is no basis for disqualifying [the law firm] based on the necessary testimony of one of its partners in support of defendants' case.").

---

[7] *See* Robert A. Machado, Report of Investigation of Allegations of Corruption and Recommendation of Removal, available at http://graphics8.nytimes.com/packages/pdf/nyregion/20labor.pdf.

[8] Rule 1.8(b) provides that "[a] lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these Rules." N.Y. Rules Prof'l Conduct R. 1.8.

11

III. Conclusion

For the foregoing reasons, defendants' motion to disqualify Elizabeth O'Leary as plaintiffs' current trial counsel, Bruce Levine as former trial counsel, and their law firm of Cohen Weiss is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 15, 2010
Central Islip, New York

\* \* \*

The attorneys for plaintiffs are James L. Linsey and Elizabeth O'Leary of Cohen, Weiss and Simon, LLP, 330 West 42nd Street, New York, NY 10036. The attorney for defendants Frattarelli Brothers, Inc., Podesta Trucking Corp., Vincent Frattarelli, and Rogelio Podesta is Stacey D. Adams of Littler Mendelson, One Gateway Center, 8th Floor, Newark, NJ 07102.